IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACR ENERGY PARTNERS, LLC<br><br>Plaintiff,<br><br>v.<br><br>POLO NORTH COUNTRY CLUB, INC.,<br><br>Defendant. | Civil Action No. 15-_____<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff, ACR Energy Partners, LLC ("ACR Energy"), through its undersigned attorneys, in support of this Verified Complaint filed against Defendant, Polo North Country Club, Inc. ("Polo North"), hereby states as follows:

### Introduction

1. This Complaint arises from Polo North's recent purchase of the property formerly known as the Revel Atlantic City Hotel and Casino (the "Complex"), and its unilateral decision to forego paying for energy services under the Energy Sales Agreement that the former owner of the Complex had entered into with ACR Energy and which remains executory. Indeed, rather than assuming the Energy Sales Agreement, as the bankruptcy process allowed, or even negotiate in good faith toward an interim or a long-term contract, Polo North has announced

its intention to imminently begin to improperly use the energy equipment and distribution system owned by ACR Energy within the Complex (collectively, the "ACR-Owned Equipment") to power, heat and cool the Complex. Not only is such a wrongful interference with ACR Energy's property a wholesale derogation of the law, but it threatens to immediately cause irreparable damage to the ACR-Owned Equipment.

2. Were these risks not enough, because of the dangers posed (i) to the ACR-Owned Equipment, and the expertise and training required to safely operate such equipment, Polo North's attempt to inspect, attach equipment to, operate or distribute energy through the ACR-Owned Equipment are likely to cause serious human injury or death. Absent the entry of an appropriate order enjoining Polo North, and its agents, representatives and contractors from interfering with or operating the ACR-Owned Equipment, and (ii) to ACR Energy and the public resulting from the unlicensed or permitted operation of temporary electrical generating equipment in violation of applicable Federal, state and local air, noise and water pollution laws and regulations, both ACR Energy and the public will be irreparably harmed.

## Parties

3. Plaintiff, ACR Energy Partners, LLC, is a New Jersey limited liability company, with an address of 5429 Harding Highway, Suite 501, Mays Landing, New Jersey 08330.

4. Defendant, Polo North Country Club is, upon information and belief, a corporation organized under the laws of the State of Florida and maintains a principal place of business at 11199 Polo Club Road, Wellington, Florida 33414. Polo North is the Defendant in this action.

## Jurisdiction and Venue

5. This Court has subject-matter jurisdiction over this Complaint because the claims asserted herein are core claims within the meaning of 28 U.S.C. § 157(b)(2).

6. In the alternative, this Court has subject-matter jurisdiction over this Complaint because the claims asserted herein are "related to" the title 11 bankruptcy proceedings pending in the Bankruptcy Court pursuant to 28 U.S.C. § 1334.

7. Venue is proper in this Court because the Revel bankruptcy cases are pending in this district and all of the events or omissions giving rise to claims

asserted herein occurred or will occur within this judicial district and because all of the property that is the subject of this action is situated within this judicial district.

## Facts Common to All Counts

9. In April 2007, Revel AC, Inc. ("Revel"), issued a Request For Proposal ("RFP") soliciting proposals from providers to "Own, Design, Construct, Operate and Maintain" a complete Central Utility Plant ("CUP") to provide energy services to the Complex. In return, Revel would enter into an agreement with the chosen company to purchase utility services, including chilled water, hot water, and electricity as well as emergency standby power, to be delivered to the Complex that Revel planned to construct in Atlantic City.

10. Following several years of delay, Revel and ACR Energy entered into an Energy Sales Agreement on February 17, 2011 (the "ESA") under which ACR Energy agreed to design, construct, finance, and operate the CUP and its attendant distribution system from the CUP to the Complex and within the Complex ("Distribution System"). The agreement was amended and restated twice —first on March 8, 2011 and later on April 11, 2011.

11. Generally, the CUP manages and transforms electricity received from Atlantic City Electric through a specially designed and constructed substation owned by ACR Energy. The only connection between the Complex and the power

grid is through ACR Energy's CUP and Distribution System. The plant also generates electricity and maintains standby backup emergency generation to serve Revel's needs, as well as providing hot water and chilled water and parasitic services.

12. The production of energy and its transmission to the Complex utilizes the infrastructure installed and largely owned by ACR Energy both in the CUP and inside the Complex (the "ACR Energy Distribution System"). Inside the Complex, the ACR Energy Distribution System comprises a network of hot and cold water pipes, pumps, valves, and electrical equipment such as transformers, switchgears, and circuit breakers to provide electricity to the Complex.

13. The ACR Energy Distribution System cost ACR Energy approximately $40 million. The CUP also houses emergency diesel generators that are interconnected via paralleling switchgear to serve the CUP and the Complex. The generators have the capacity to permit the casino to remain fully operational and to allow the remainder of the complex to remain in a safe mode. **Exhibit A** shows pictures of the boilers, chillers, piping to transmit hot and chilled water, the

ACR Energy-owned energy transfer station in the Complex, and other ACR Energy-owned electrical equipment in the Complex.[1]

14. The CUP and ACR Energy Distribution System was designed and built to Revel's specifications and contains equipment that was designed specifically for this system and, as such, is unique and irreplaceable.

15. Moreover, the equipment comprising the ACR Energy Distribution System is extremely dangerous and, if not inspected, maintained, repaired and operated by trained ACR Energy personnel, is likely to cause serious and permanent human injuries, including death.

16. On June 19, 2014 (the "Petition Date"), Revel AC, Inc. and its subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, and in fact for many months before, Revel attempted to market and sell their assets, through a flawed and contentious sale process. In the end, after submitting two earlier bids that had failed, the Bankruptcy Court entered the Order approving of the sale of the Debtors assets to Polo North on April 6, 2015 ("Sale Order"). A copy of the Sale Order, together

---

[1] The turbines depicted on Exhibit "A" represent a combined heat and power generation operation owned by ACI Energy Partners, LLC ("ACI"), a sister entity to ACR Energy. ACR Energy and ACI are parties to a lease and a power purchase agreement, whereby ACI leases a portion of the demised premises possessed by ACR and generates and provides to ACR Energy for sale to the Complex electricity and heat.

EAST\97694767.1          6

with exhibit A thereto, the Amended and Restated Asset Purchase Agreement dated March 20, 2015 (the "Amended Polo North APA"), is attached hereto as **Exhibit B**.

17. Due entirely to closing conditions of Polo North's own making, on or about April 7, 2015, upon information and belief the sale to Polo North from Revel closed pursuant to Amended Polo North APA.

18. From the inception of the sale process, all parties, including Polo North, were aware that the sole source of energy services to the Complex was through the CUP and the ACR Energy Distribution System and provided pursuant to the ESA. Nonetheless, at the request of Polo North, on December 14, 2014, Revel filed in the Bankruptcy Court their *Motion for Entry of Order Rejecting Contracts with ACR Energy* [D.I. 1032] (copy attached hereto as **Exhibit C**). The Rejection Motion made clear that Polo North "has elected not to have the ESA assumed and assigned to it in connection with such sale." *Id* at 3.

19. Further, pursuant to the Amended Polo North APA, there was no requirement for Revel to ensure any continuity of energy services, as the only obligation was: "All utility services that are available to the Revel Casino Hotel as of the date of this Agreement shall remain in effect in all material respects through the Closing Date . . ." *See* **Exhibit B** at § 10.6.

20. Notwithstanding Polo North's clear and unequivocal decision to acquire the Complex (specifically, only that portion of the assets comprising the Complex owned by Revel) without conditioning such acquisition on an agreement to purchase energy services from ACR Energy, ACR Energy for over four months attempted to negotiate the terms of a new energy services agreement with Polo North. Polo North refused all efforts to arrive at an appropriate market agreement for energy services.

21. With no agreement for energy services on the Closing Date and ACR Energy unwilling to continue to provide such services at a price below cost and a reasonable profit, on multiple occasions, ACR Energy demanded assurances from Polo North that it would be paid for the energy services delivered to the Complex effective as of the Closing Date and thereafter, and ACR Energy receiving no acceptable offer to purchase energy services or any assurance of payment by Polo North, ACR Energy provided Polo North of its intention to terminate service. *See* Notice of Termination, **Exhibit D**.

22. As Polo North made no reasonable attempt to provide ACR Energy assurance that energy services provided by ACR Energy to the Complex would be paid for and would not agree to pay the reasonable and market rate for energy services, on April 9, 2015, ACR Energy terminated service to the Complex.

23. Since taking possession of the Complex, Polo North has, upon information and belief, directly and intentionally taken action and has stated its intention further to interfere with the ACR Energy Distribution System by, among other things:

   a. Intentionally threatening to operate the ACR Energy Distribution System by hooking up temporary generators;

   b. Attempting to remove parts from or alter the ACR Energy Distribution System; and

   c. Otherwise intentionally interfering with the ACR Energy Distribution System.

## FIRST COUNT

### (Trespass to Chattel)

24. ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Complaint as if set forth at length herein.

25. By intentionally interfering with the ACR Energy Distribution System, Polo North, directly, or through its agents, representatives or contractors, has committed Trespass to Chattels belonging to ACR Energy. To state a claim for trespass to chattels under New Jersey law, a claimant must assert the following elements: (1) the plaintiff owns personal property; (2) with which the defendant

has interfered or intermeddled; and (3) such that the value or condition of the property is impaired. *Great Am. Ins. Co. v. Nicholas*, 1989 WL 125350, at *3 (D.N.J. Oct. 3, 1989). Trespass to chattels does not limit itself to damage to chattels, rather "a trespass to a chattel may be committed by intentionally ...intermeddling with a chattel in the possession of another." *Restatement (Second) of Torts. § 217* (1965).

26. ACR has been damaged and stands to be irreparably harmed by Polo North's intentional interference with the ACR Energy Distribution System.

## SECOND COUNT

### (Conversion)

27. ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Answer and Complaint as if set forth at length herein.

28. Polo North, directly, or through its agents, representatives or contractors, has, upon information and belief, intentionally attempted to exercise dominion and control over the ACR Energy Distribution System, or a portion thereof. Under New Jersey law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alternation of their condition or the exclusion of an owners' rights. *LaPlace v. Briers,* 404 N.J. Super. 585 (App. Div. 2009); *Chicago Title Ins. Co.*

*v. Ellis*, 409 N.J. Super. 444, 456, 978 A.2d 281, 288 (App. Div. 2009) (conversion is the "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property.").

29. Polo North's intentional and wrongful conduct, directly, or through its agents, representatives or contractors, has deprived ACR Energy of its rights to the ACR Energy Distribution System.

30. ACR Energy has been damaged and is under imminent threat of damage by Polo North's intentional conversion of the ACR Energy Distribution System, or portion thereof.

## THIRD COUNT

### (Public Nuisance)

31. ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Complaint as if set forth at length herein.

32. A public nuisance "is related to conduct, performed in a location within the actor's control, which has an adverse effect on a common right. Second, a private party who has suffered special injury may seek to recover damages to the extent of the special injury and, by extension, may also seek to abate." *In re Lead Paint Litig.*, 191 N.J. 405, 429, 924 A.2d 484, 499 (2007).

33. Polo North's efforts to bring energy services to the Revel Casino though generators and other unintended methods, pose the real and immediate risk of a public nuisance.

## FOURTH COUNT

### (Injunction)

34. ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Complaint as if set forth at length herein.

35. Preliminary injunctive relief is warranted when (1) the movant shows a reasonable likelihood of success on the merits; (2) the movant is likely to suffer irreparable harm in the absence of the requested relief; (3) the threatened harm to the moving party outweighs any harm to the non-moving party; and (4) the public interest favors granting the requested relief. *New Jersey Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012). This test requires the Court to "balance these four . . . factors to determine if an injunction should issue." *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 2009) (quotation omitted).

36. First, the uncontroverted facts demonstrate that ACR Energy is likely to succeed on the merits of all three causes of action set forth above. Second, Polo North's wrongful conduct justifies equitable relief and clearly satisfies the element

of irreparable harm. Not only will Polo North's designed conduct seriously and potentially permanently damage the ACR Energy Distribution System, but the consequences of Polo North's conduct could create severe and irreparable damage to Atlantic City, its population and environs. Generally "harm is considered irreparable in equity if it cannot be redressed by money damages," *Del. River & Bay Auth. v. York Hunter Constr., Inc.*, 344 N.J. Super. 361, 365-69 (Ch. Div. 2001). Certainly, the actions contemplated by Polo North pose risks that monetary damages cannot redress.

37. Third, the balance of equities again clearly tips sharply in favor of ACR Energy's request for injunctive relief. It cannot be ignored that Polo North voluntarily elected to close on the purchase of the Revel Casino with full knowledge for months of the need for energy services and that such services had been provided since construction by ACR Energy pursuant to the ESA.[2] Not only

---

[2] Indeed, as Judge Simandle noted with respect to ACR Energy's motion for stay pending appeal of the January Polo North Sale Order:

> The situation is different with regard to ACR, whose power plant continues to function for the benefit of Debtors' property. It is logically and economically not conceivable that the purchaser, interested in maintaining and developing the premises, would evict ACR and plunge the project into darkness. This was acknowledged, if not promised, by counsel for Polo North at the hearing on this motion.

did Polo North choose not to assume the ESA, which the Bankruptcy Code clearly allowed, but, despite the concerted efforts of ACR Energy to accommodate Polo North with discounted transition period pricing, it failed to engage in any reasonable negotiations toward even a short term energy services agreement.

38. Fourth, the public interest strongly favors granting ACR Energy injunctive relief. First and foremost, a hallmark of the public interest is the recognition and respect the law recognizes of the ownership of private property. Polo North's unilateral attempts to seize the ACR Energy Distribution System and use it at **no cost** to power the Revel Casino, runs afoul of all notions of the public interest.

39. Moreover, Polo North's unilateral, unsupervised and ill-conceived strategy to power the Revel Casino using generators and other unknown equipment, presents real and material risk to Atlantic City, as well as the men and women Polo North will have tampering with the ACR Energy Distribution System. In this case, the public interest strongly favors granting injunctive relief.

---

*In re Revel AC, Inc.,* 525 B.R. 12, n.15 (D.N.J. 2015) rev'd, No. ECO-013-E, 2015 WL 500704 (3d Cir. Jan. 29, 2015) and on reconsideration in part, No. 14-22654 GMB, 2015 WL 567015 (D.N.J. Feb. 10, 2015).

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant Polo North Country Club, Inc., as follows:

a. Preliminarily and permanently enjoining Polo North, its employees, agents, representatives, contractors or any other person or entity purporting to act on its behalf from inspecting, maintaining, repairing, attaching any equipment of lines to, or operating or attempting to operate, or in any way interfering with, the ACR Energy Distribution System;

b. Compensatory and consequential damages;

c. Attorneys' fees and costs of suit; and

d. Such other relief as the Court deems just and equitable.

**DLA Piper LLP (US)**
17 Gordon's Alley
Suite 100
Atlantic City, New Jersey 08401
(609) 449-7000
stuart.brown@dlapiper.com


By: __/s/ Stuart M. Brown__
      Stuart M. Brown