```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ACR ENERGY PARTNERS, LLC,<br><br>              Plaintiff,<br><br>   v.<br><br>POLO NORTH COUNTRY CLUB, INC.,<br><br>              Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>15-2677 (JBS/JS)<br>15-5324 (JBS/JS)<br><br>**MEMORANDUM OPINION** |
| POLO NORTH COUNTRY CLUB, INC.,<br><br>              Plaintiff,<br><br>   v.<br><br>ACR ENERGY PARTNERS, LLC,<br><br>              Defendant. | |

**SIMANDLE, Chief Judge:**

In these actions, ACR Energy Partners, LLC (hereinafter, "ACR") continues its long-standing battle with Polo North County Club, Inc. (hereinafter, "Polo North") concerning the manner in which (if at all) to electrify the beleaguered and now defunct Revel Casino (hereinafter, "Revel"), a casino hotel in Atlantic City, New Jersey that Polo North acquired on April 7, 2015 through a bankruptcy sale.

Following this Court's resolution of injunctive motion practice, Polo North now moves to dismiss ACR Energy Partners, LLC v. Polo North Country Club, Inc., Civil Action No. 15-2677

(JBS/JS) (hereinafter, the "Original Action") and to remand Polo North Country Club, Inc. v. ACR Energy Partners, LLC, Civil Action No. 15-5324 (JBS/JS) (hereinafter, the "Removed Action"), for lack of subject matter jurisdiction.[1]  [See Docket Item 60 in 15-2677; Docket Item 14 in 15-5324.]

   The primary issue before the Court concerns whether these actions present, on their face, a question of federal law, or one arising under or sufficiently related to federal law.  For the reasons that follow, the Court finds it may exercise subject matter jurisdiction over each action.  Polo North's motions to dismiss and to remand will therefore be denied.

   The Court finds as follows:[2]

   1.   The Complaints in these actions present a maze of allegations, spanning from early 2007 to the present.  For

---

[1] By Order dated August 21, 2015, the Court resolved to address the jurisdictional issue presented in these actions in a single, consolidated decision.  See ACR Energy Partners, LLC v. Polo North Country Club, Inc., 309 F.R.D. 193, 195 (D.N.J. 2015).

[2] For purposes of the pending motions, the Court accepts as true the facts set forth in ACR's Amended Complaint in the Original Action and Polo North's initial Complaint in the Removed Action, together with the exhibits attached to the Complaints, documents explicitly relied upon in the Complaints, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).  Here, the material portions of each Complaint are substantively identical, and the Complaints either attach or explicitly rely upon the same documents—particularly, the ESA and ground lease, explained below.  For these reasons, the Court finds it appropriate to discuss the allegations of these Complaints together and will, in the interests of simplicity, primarily refer to the Amended Complaint filed in the Original Action, unless otherwise indicated.

purposes of the pending motion, however, the Court need not retrace the lengthy factual and procedural history of these related actions. Rather, the Court will narrow in on the allegations most relevant to disposition of the pending jurisdictional issue.[3]

    2. **Execution of the Energy Sales Agreement and Ground Lease**. On April 11, 2011, Revel Entertainment Group, LLC (hereinafter, "Revel") and ACR entered into an Energy Sales Agreement (hereinafter, "ESA") through which ACR agreed to serve as the exclusive provider of utility services to the Revel property.[4] (See Am. Compl. at ¶¶ 9-10.) In connection with the ESA, ACR agreed to design, construct, finance, and operate a central utility plant (hereinafter, "CUP") adjacent to the Revel complex, in order to manage and transform electricity received from Atlantic City Electric, and to provide hot and chilled water, among other services. (Id. at ¶¶ 12-15.) The transmission of these utilities, in turn, required significant infrastructure within the CUP, as well as the installation of "a network of hot and cold water pipes, pumps, valves, and electrical equipment such as transformers, switchgears, and

---

[3] ACR filed its Amended Complaint in the Original Action on April 17, 2015 [see Docket Item 13 in the Original Action], and it removed Polo North's Complaint in the Removed Action on July 7, 2015. [See Docket Item 1 in the Removed Action.]

[4] Revel and ACR executed an initial ESA on February 17, 2011, followed by the first amended and restated ESA on March 8, 2011. (See Am. Compl. at ¶ 10.)

3

circuit breakers" within the Revel facility (hereinafter, the "Energy Distribution System"). (Id. at ¶ 16.)

3. Because ACR did not (and does not) own the land intended for the CUP, ACR separately entered into a ground Lease with an affiliate of Revel on April 8, 2011. (Id. at ¶¶ 12-14.) Although executed independently, the ESA and Lease constitute co-dependent agreements, because the parties entered in the Lease solely to enable ACR to perform its obligations under the ESA. (Compl. in the Removed Action at ¶ 13.) To that end, the Lease states that its term will be coterminous with the ESA, and provides either party the right to terminate the Lease upon expiration and/or termination of the ESA. (Id. at ¶¶ 14-16.) The ESA, in turn, states that it may terminate in the face of, among other things, ACR's failure to perform its contractual obligations. (Id. at ¶ 17.)

4. **Revel Bankruptcy, Bankruptcy Court Approval of Polo North Sale, and the Revel Debtors' Rejection of the ESA and Lease**. On June 19, 2014, Revel and its subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (See Amended Complaint in the Original Action at ¶ 16.) Following an extended sale process, on March 20, 2015, Polo North and Revel executed an Amended and Restated Asset Purchase Agreement for the sale of substantially all of the Revel assets (including the

4

Revel complex and the CUP parcel).  (See id. at ¶ 16; Complaint in the Removed Action at ¶ 19.)  The Revel Debtors then moved to reject the ESA and the Lease, on account of Polo North's decision not to assume these agreements as part of the sale. (Am. Compl. in the Original Action at ¶ 25 (citation omitted); see also Ex. C to Am. Compl. in the Original Action.)

5.  On April 6, 2015, the Bankruptcy Court approved the Polo North sale (hereinafter, the "Sale Order"), but rejected the Revel Debtors' efforts to strip the assets of ACR's interests.[5]  (See Ex. C to Am. Compl. in the Original Action.) Rather, the Sale Order carved out ACR's special possessory interests, and specifically provided that,

> Notwithstanding anything to the contrary in this Sale Order or the [Asset Purchase] Agreement, the Sale of Assets to [Polo North] pursuant to this Sale Order <u>shall not be free and clear of (i) any existing tenancies and/or possessory interests of ... ACR</u> ... pending the [Revel] Debtors' rejection pursuant to Section 365 of the Bankruptcy Code of the agreements containing such tenancies and/or possessory interests (the "Possessory Agreements"), and (ii) any rights elected to be retained by each of the nondebtor counterparties to the [ESA and Lease] pursuant to Section 365(h) of the Bankruptcy Code after the [Revel] Debtors' rejection of the Possessory Agreements (such tenancies, interests, and rights referred to in (i) and (ii) collectively, the "Possessory Interests").

(Id. (emphasis added).)  Shortly thereafter, the Bankruptcy Court held a hearing on the Revel Debtors' motion to reject the

---

[5] Polo North has, since that time, taken possession of the Revel complex.  (Am. Compl. in the Original Action at ¶ 24.)

ACR agreements, and subsequently entered an Order granting the rejection motion "nunc pro tunc to the closing date of the sale," April 7, 2015 (hereinafter, the "Rejection Order"). [See Docket Item 1663 in Bankruptcy Action No. 14-22654 (MBK).] In light of the Rejection Order, ACR filed a notice in the Original action (and in the Revel bankruptcy) of its election to retain its possessory rights under the ESA and ground lease pursuant to section 365(h) of the Bankruptcy Code, 11 U.S.C. § 365(h) (hereinafter, "section 365(h)"). [See Docket Item 42 in the Original Action.]

    6.  **Termination of ACR's Utility Services and Polo North's Demand for Possession of the CUP Parcel**. With no agreement for utility services in place following the sale, ACR terminated all energy services to the Revel facility "as of 12 noon on April 9, 2015." (Ex. D to Am. Compl.; see also Am. Compl. in the Original Action at ¶ 31; Compl. in the Removed Action at ¶ 21.) Polo North, in turn, advised ACR of its positions: (1) that the Lease had been terminated on account of (a) Polo North's decision not to assume the ESA or Lease and (b) ACR's cessation of energy services to the facility; and (2) that ACR had abandoned all equipment at the CUP parcel (along with other ACR equipment located within the Revel complex). (Ex. E to Am. Compl. in the Original Action; see also Compl. in the Removed Action at ¶¶ 22-23.) Polo North therefore demanded that ACR

vacate the CUP parcel.  (See Compl. in the Removed Action at ¶ 23; see also Am. Compl. in the Original Action at ¶¶ 32-35.)

      7.   **Litigation in this District**.  In light of Polo North's demand, and following information that Polo North intended to interfere with "the ACR Energy Distribution System," ACR filed initial and Amended Complaints in this District, asserting claims, in relevant part, for trespass to chattels, conversion, and for declaratory judgments that the Lease and possessory interests of ACR remain effective (and that ACR need not vacate the CUP parcel).[6]  (See Am. Compl. in the Original Action at ¶¶ 36-70.)  Polo North, in turn, filed its Complaint in the Removed Action, seeking possession of the CUP parcel (over ACR's occupancy) and judgments declaring the Lease terminated and the Energy Distribution System abandoned.  (Compl. in the Removed Action at ¶¶ 33-46.)  The pending motions followed.  [See Docket

---

[6] As a result, ACR moved for a temporary restraining order on April 15, 2015, on the basis that Polo North's expressed intention "to imminently and improperly use the energy equipment owned by ACR Energy and located with the Revel Casino" risked irreparable damage to ACR's property, and would likely lead to "serious human injury or death."  [See Docket Item 5.]  Following a number of in-person hearings and conference, the Court entered a Temporary Restraining Order, barring Polo North, and its agents, employees, contractors, and all acting in concert with it, "from connecting any standby generators or otherwise energizing its system by or through the ACR System" [Docket Item 15 in the Original Action at ¶ 1], and subsequently entered a Consent Order that required ACR to provide certain minimum electrical services to the Revel facility at an agreed-upon rate.  [See Docket Item 66 in the Original Action.]

Item 60 in the Original Action; Docket Item 14 in the Removed Action.]

8.  In seeking to dismiss and/or remand these actions for lack of subject matter jurisdiction, Polo North takes the position that they present "quintessential state law" questions involving contract interpretation and tenancies.  (Polo North's Br. in the Removed Action at 4, 17-29.)  As a result, Polo North submits that these actions neither involve federal law, nor "arise under" and/or "relate to" the Bankruptcy Code and the Revel bankruptcy.  (Id. at 4.)  ACR and the Bank of New York Mellon (hereinafter, "BNYM")[7] argue, by contrast, that these actions squarely concern ACR's substantive rights under 11 U.S.C. § 365(h), and therefore plainly find their proper place in federal Court.  (See ACR's Opp'n in the Removed Action at 23-32; BNYM's Opp'n in the Removed Action at 12-26.)

9.  Resolution of the pending motions turns upon consideration of three distinct bases for subject matter jurisdiction: (1) original jurisdiction under 28 U.S.C. § 1331; (2) ancillary "arising under" jurisdiction under 28 U.S.C. §

---

[7] On August 19, 2015, the Court granted BNYM's application to intervene as a matter of right.  See ACR Energy Partners, LLC v. Polo North Country Club, Inc., 309 F.R.D. 191, 192 (D.N.J. 2015).

1334(b); and (3) ancillary "related to" jurisdiction under 28 U.S.C. § 1334(b).[8] The Court will address each in turn.[9]

10. 28 U.S.C. § 1331 vests in federal district courts "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." A case "aris[es] under" federal law within the meaning of § 1331, if "'a well-pleaded complaint establishes that federal law create the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.'" Empire Healthchoice Assurance, Inc.

---

[8] The Court notes, at the outset, that these actions present distinct procedural circumstances, given the fact that the Original Action began in this federal Court, while the Removed Action began in state court. As a result, the Removal Action implicates a body of removal statutes with no application to the Original Action. See, e.g., 28 U.S.C. § 1441(a) (providing that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing" the pending action"), 28 U.S.C. § 1452(a) ("[a] party may remove any claim or cause of action in a civil action . . . if such district court has jurisdiction of such claim or cause of action under section 1334 of this title"). Nevertheless, the difference has no impact on the disposition of the pending motions, because the removal statutes merely require consideration of 28 U.S.C. §§ 1331 and 1334, the jurisdictional statutes that the Court would have reviewed and applied in any event.

[9] Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1447(c) collectively authorize Polo North to challenge these actions for want of subject matter jurisdiction. In either instance, ACR (as the original filer and as the removing party) bears the burden of demonstrating subject matter jurisdiction. See Samuel–Basset v. KIA Motors Am. Inc., 357 F.3d 392, 396 (3d Cir. 2004); Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

9

v. McVeigh, 547 U.S. 677, 690 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983)).  As a result, in determining whether the action rests upon a substantial federal question, district courts look to the face of a complaint in accordance with the "well-pleaded complaint" rule.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998).  In that way, a plaintiff may avoid federal jurisdiction through exclusive and genuine reliance upon state law.  See Krashna v. Oliver Realty, Inc., 895 F.2d 111, 113 (3d Cir. 1990); State Farm Indem. v. Fornaro, 227 F. Supp. 2d 229, 237 (D.N.J. 2002).  By the same token, however, a plaintiff may not avoid federal jurisdiction by artfully disguising a substantial federal issue as a state cause of action.  Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981)).

    11.  In arguing that ACR attempted "to manufacture a federal question where none exists," Polo North submits that these actions do not implicate ACR's rights under 11 U.S.C. § 365(h), nor the possessory interests ACR preserved during the Revel bankruptcy proceeding.  (Polo North's Br. in the Original Action at 3-6; Polo North's Br. in the Removed Action at 17-21.)  Polo North's arguments, however, fundamentally ignore the nature

10

of its own claims and those of ACR, the majority of which directly arise from section 365(h). A brief inspection of the backdrop of these actions and their statutory context proves illustrative. Critically, following the Bankruptcy Order's Rejection Order, ACR provided notice of its

> <u>election to retain possession of, and all rights in and appurtenant to the real property that may be the subject of the [ESA and Lease], and to assert all of its rights under the [ESA and Lease] pursuant to section 365(h) of the Bankruptcy Code, including, without limitation, all rights of possession of the demised premises under the Lease and all rights of access, licenses and easements under and through the streets and into and within the property purchased by Polo North</u>, provided for and contemplated under the ACR Rejected Contracts, other Project Documents, as defined therein, and under applicable law, and including all rights of ownership, access, inspection and repair maintenance of the Seller's System, as defined in the Project Documents, located in, on, adjacent to or appurtenant to Polo North's property.

[Docket Item 42 in the Original Action at ¶ 8 (emphasis added).]

12. The language of section 365(h), in turn, makes plain that, if a debtor rejects an unexpired lease, as here, the lessee may elect to retain its rights in or appurtenant to the real property, including "any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation," for the remainder of the lease term and for any renewal or extension of such rights to the extent enforceable under applicable nonbankruptcy law. 11 U.S.C. § 365(h)(1)(A)(ii); <u>see also</u> <u>In re Tayfur</u>, 599 F. App'x 44, 50 (3d Cir. 2015) (explaining that a

11

section 365(h) election allows a tenant to retain its possessory rights over the leased property for at least until the end of the primary lease term); In re Overseas Shipholding Grp., Inc., No. 12-20000, 2015 WL 3475727, at *3 (Bankr. D. Del. June 1, 2015) (same).  Thus, ACR would continue to have possessory rights over the CUP parcel at least until the end of the primary lease term, which expires "contemporaneously with the expiration" of the ESA's 20-year term.  (See Schedule 9 to the ESA at § 2.2; see also ESA at § 2.01(a).)

    13.  Despite this election and the Sale Order's retention of ACR's possessory rights, Polo North has nonetheless sought to terminate ACR's leasehold estate.  As a result, in the Original Action, ACR seeks a declaration that the CUP parcel remains subject to the Lease and ACR's possessory interests under section 365(h), despite Polo North's insistence that ACR vacate.  (See Am. Compl. in the Original Action at ¶¶ 52-70.)  In the removed action, by contrast, Polo North seeks a declaration of its entitlement to possession of the CUP parcel, on account of ACR's "termination of Energy Services to the [Revel] Complex."  (See Compl. in the Removed Action at ¶¶ 33-46.)  The nuanced interrelationship between the ESA, the Lease, and ACR's section 365(h) rights therefore requires far more than the simple application of state law contract and/or landlord-tenant principles.  Indeed, the fundamental questions that must be

12

confronted in each action concern whether ACR had an ongoing duty to supply power to the Revel facility, even after the Revel debtors' rejection; and whether this duty, if any, can be used to trump ACR's section 365(h) rights. Although these inquiries seem initially simple, the facts of these actions make this inquiry significantly more complex, given the fact that Polo North took the Revel facility subject to ACR's possessory interests under section 365(h), but claims that an alleged breach of the ESA, an agreement to which Polo North is not a party, provides the basis for it to extinguish ACR's possessory interest.

14. Polo North's attempt to effect an end-run around ACR's section 365(h) election (by, in essence, stripping ACR of its leasehold interest on account of an alleged breach of the ESA) therefore requires a robust analysis of the meaning and effect of ACR's election. Broadly stated, this Court (or the Bankruptcy Court) must address the effect of a meaningful section 365(h) election in the context of a sale under 11 U.S.C. § 363, where the purchasing party took assets subject to interests, but not individual agreements. In that way, these actions require the resolution of a substantial question under section 365(h) (and related provisions of the Bankruptcy Code),

13

and plainly arise under federal law.[10]  For all of these reasons, the Court finds the exercise of original jurisdiction over these actions under 28 U.S.C. § 1331 appropriate.[11]

15.  In the alternative, the Court finds the exercise of jurisdiction appropriate, to the extent these actions arise under the Bankruptcy Code in connection with the now-closed Revel bankruptcy proceedings.  28 U.S.C. § 1334(b) provides, in particular, that "the district courts shall have original but

---

[10] Even more, the circumstances of these actions closely resemble the circumstances deemed sufficient for jurisdictional purposes by the Bankruptcy Court in Revel.  In IDEA Boardwalk, LLC v. Revel Entertainment Group, LLC, 532 B.R. 216 (Bankr. D.N.J. 2015), IDEA Boardwalk, LLC, a former tenant in the Revel facility, elected to retain its section 365(h) rights, as here, and then sought clarification of those rights following the Rejection and Sale Orders and certain actions by Polo North. Id. at 220-222.  In addressing a jurisdictional challenge highly similar to the one presented here, the Bankruptcy Court found that the action squarely rested upon federal law, to the extent it involved substantive section 365(h) rights that would not have existed in the absence of the Revel bankruptcy.  Id. at 223-25.  Although the Complaints in these actions do not explicitly seek clarification of ACR's section 365(h) rights, they implicitly do so, by demanding that ACR either be deemed entitled to possession based upon its section 365(h) election or dispossessed over its section 365(h) election.  For that reason, this Court will follow the Bankruptcy Court's decision in IDEA Boardwalk, LLC, in finding the exercise of jurisdiction appropriate in disposing of such issues.

[11] The Court finds Polo North's reliance upon Dollar Tree Stores, Inc. v. Bayless Inv. & Trading Co., No. 10-50206, 2010 WL 3322448 (Bankr. D. Del. Aug. 20, 2010) unconvincing. Critically, in Dollar Tree Stores, Inc., the Court only found jurisdiction lacking, because the asserted complaint sought to alter a term in a lease, an issue "not unique to bankruptcy cases." Id. at *2.  These actions, by contrast, concern the very existence of ACR's continued possessory rights under section 365(h), and not simply an effort to alter a term relative to those possessory rights.

not exclusive jurisdiction of all civil proceedings <u>arising under</u> title 11..." 28 U.S.C. § 1334(b) (emphasis added).  In simple terms, "arising under" jurisdiction requires, like original federal question jurisdiction, that the disputed issues involve a substantive right created under the Bankruptcy Code.  <u>See</u> <u>Stoe v. Flaherty</u>, 436 F.3d 209, 216 (3d Cir. 2006) (citation omitted) (noting that "[b]ankruptcy 'arising under' jurisdiction is analogous to the narrower statutory 'arising under' federal question jurisdiction of 28 U.S.C. § 1331").  Thus, this Court may exercise "arising under" jurisdiction for the same reasons that it may exercise original federal jurisdiction, namely, the fact that these actions require an interpretation of the meaning and effect of ACR's section 365(h) rights.  Indeed, ACR's section 365(h) rights are at issue in these actions solely by virtue of the <u>Revel</u> bankruptcy proceedings.  <u>See</u> <u>United States Trustee v. Gryphon at the Stone Mansion, Inc.</u>, 166 F.3d 552, 556 (3d Cir. 1999) (reasoning that a proceeding "arises under" the Bankruptcy Code, if it has essentially "no existence outside of the bankruptcy"); <u>see</u> <u>also</u> <u>IDEA Boardwalk, LLC</u>, 532 B.R. at 223.  Even more, these actions plainly require the interpretation of the Rejection and Sales Order, both of which the Bankruptcy Court entered pursuant to the applicable portions of the Bankruptcy Code.  As a result, these actions also qualify for

"aris[ing] under" jurisdiction within the meaning of 28 U.S.C. § 1334(b).

    16.  For all of these reasons, Polo North's motions to dismiss to the Original Action and to remand the Removed Action will be denied.[12]  An accompanying Order will be entered.

| | |
|---|---|
| **November 5, 2015** |  s/ Jerome B. Simandle |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

[12] Having found that the Court may exercise original and arising under jurisdiction, the Court need not reach ACR's alternative arguments on related to and/or diversity jurisdiction under 28 U.S.C. §§ 1332, 1334(b), nor its position on New Jersey's Entire Controversy Doctrine.